IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
:
vs. :
: CRIMINAL NO. 1:CR-08-433
JAMES MURPHY, a/k/a/ JIMMY :
MURPHY, a/k/a BLACK, :
        Defendant :
:
:

*M E M O R A N D U M*

I. *Introduction*

Defendant, James Murphy, a/k/a/ Jimmy Murphy, a/k/a "Black," has filed a pro se motion under 28 U.S.C. § 2255 to vacate his conviction and sentence. In July 2009, a jury convicted Defendant of drug-trafficking offenses involving crack cocaine and heroin. In June 2010, he was sentenced to 360 months of incarceration. His conviction was affirmed on direct appeal. *United States v. Murphy*, 460 F. App'x 122 (3d Cir. 2012)(nonprecedential).

In his 2255 motion, he makes the following claims. First, the prosecutor violated the Sixth Amendment by making a "public accusation" against him during the separate and earlier trial of his co-conspirators. Second, the prosecutor abused the grand-jury process and violated the Fifth Amendment by convening a second grand jury to investigate and gather additional evidence on him when the same criminal episode had already led to the indictment and trial of his co-conspirators.

Third, the indictment was deficient by not fairly informing Defendant of the charges he had to meet. As part of this claim, Defendant argues the indictment was brought in bad faith because: (1) the conspiracy count was based on the previous case, which had already been terminated; and (2) the substantive count was pled like a continuing offense even though the original offense terminated on July 23, 2008. Fourth, the indictment violated the Double Jeopardy Clause because Defendant had already been publicly accused during the trial of the prior indictment and because both prosecutions dealt with the same criminal episode, with the government "subdividing" the conspiracy offense between the two prosecutions.

Fifth, the Fourth Amendment was violated when Defendant was detained and his backpack searched on January 10, 2008, and trial counsel was ineffective in not moving to suppress the testimony based on this search. Sixth, Defendant's Sixth Amendment right to counsel was violated when Jesse Lee Hamman, who had a cooperation agreement with the government at the time, testified to statements Hamman elicited from Defendant while they were both inmates at the Adams County prison. Seventh, Defendant's prior Maryland convictions for second-degree assault could not be used to designate him a career offender for sentencing purposes because the Tenth Amendment prohibits the United States from reclassifying the Maryland offense as a felony when it was only a misdemeanor under state law.

Defendant further argues that trial counsel and direct-appeal counsel were ineffective in not raising these claims at the proper times.

II. *Discussion*

> A. *The Prosecutor Did Not Violate the Sixth Amendment*
> *by Making a "Public Accusation" Against Defendant*
> *During the Separate and Earlier Trial of His Co-conspirators*

Defendant's first claim is that the prosecutor violated the Sixth Amendment by making a "public accusation" against him during the separate and earlier trial of his co-conspirators.

We provide some background. On August 13, 2008, Defendant's co-conspirators, Richard D. Byrd, Clifton Shields, and Laura Beth Shope were named in an indictment for conspiracy to distribute crack cocaine. *United States v. Byrd, et al.*, No. 08-CR-314. These three were also charged with substantive drug-trafficking offenses. The conspiracy count charged that the conspiracy ran from on or before March 1, 2008, through on or about July 24, 2008. The substantive counts also involved essentially the same time frame, with the substantive count against Shope charging her with distribution from on or before November 2007 through July 23, 2008. Shope pled guilty. Byrd and Shields were found guilty after a trial in November 2008. During the trial for Byrd and Shields, in response to the prosecutor's question, Shope identified Defendant as the person supplying them with the drugs. (Doc. 164-13, ECF p. 3). Defendant was indicted on December 10, 2008, and tried in July 2009.

We find no Sixth Amendment violation and note that the cases Defendant cites in support are distinguishable as they deal with the role of the grand jury. *See, e.g., United States v. Christian*, 660 F.2d 892, 902 n.16 (3d Cir. 1981); *United States v. Briggs*,

514 F.2d 794 (5th Cir. 1975).  As Defendant acknowledges, his claim does not involve the grand jury, only the action of the prosecutor in merely identifying him at the earlier trial as the source of the drugs.  (Doc. 171, supporting memorandum, p. 4).  There is simply no Sixth Amendment violation in these circumstances.

> B. *The Prosecutor Did Not Abuse the Grand- Jury Process*
> *and Did Not Violate the Fifth Amendment by Convening*
> *a Second Grand Jury to Investigate and Gather Additional*
> *Evidence on the Same Criminal Episode That Had Already*
> *Led to the Indictment and Trial of His Co-conspirators*

Defendant's second claim is that the prosecutor abused the grand-jury process and violated the Fifth Amendment by convening a second grand jury to investigate and gather additional evidence on the same criminal episode that had already led to the indictment and trial of his co-conspirators.  Defendant claims a Fifth Amendment right not to be indicted by a second grand jury after the first grand jury had investigated the same criminal episode -- when Defendant had not been indicted as a result of the earlier proceedings.[1]

We have reviewed the cases Defendant cites in support of this claim at pp. 8-12 of his supporting memorandum and find them distinguishable.  We see no Fifth Amendment violation when a defendant, not named in a first indictment, is named in a subsequent one for the same criminal episode.  Defendant's citation to the United States

---

[1] It is unclear whether a second grand jury was convened or whether the government pursued Defendant through the same grand jury.  It is not necessary to resolve this factual issue to dispose of Defendant's claim.

-4-

Attorney's Manual, Art 9-11.120.A, does not assist him. That article requires permission for resubmission to the grand jury only if the grand jury had declined to return an indictment, and the first grand jury had not declined to return an indictment against Defendant.

### C. *The Indictment Was Not Deficient*

Defendant's third claim is that the indictment was deficient, generally arguing that it did not inform him of the charges he had to defend against, or allow him to plead an acquittal or conviction as a bar against future prosecution for the same offense. He also makes specific arguments, some of which do not go to the indictment's sufficiency: (1) the indictment fails to name his co-conspirators; (2) he could not be charged with conspiracy because the government relies on the conspiracy already prosecuted in the previous case; and (3) the indictment was filed in bad faith because: (a) the conspiracy count was based on the previous case, which had already been terminated; and (b) the substantive count was pled like a continuing offense even though the original offense terminated on July 23, 2008.

We provide the pertinent background. Defendant was named in a two-count indictment. Count I charged him with conspiracy to distribute heroin and crack cocaine. It read as follows:

> From on or before November 2007, the exact date being unknown to the Grand Jury, and continuing to at least as late as on or about July 23, 2008, in Huntingdon County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere, the defendant

-5-

> . . . .
>
> knowingly and intentionally combined, conspired, confederated and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses against the United States: to knowingly and intentionally distribute and dispense a mixture and substance containing . . . heroin . . . and 50 grams and more of a mixture or substance which contains cocaine base, also known as "crack cocaine," . . . in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(A)(iii)
>
> All in violation of Title 21, United States Code, Section 846.

Count II charged him with a substantive drug offense. In pertinent part, it read as follows:

> From on or before November 2007, the exact date being unknown to the Grand Jury, and continuing to on or after July 23, 2008, in Huntingdon County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere, the defendant
>
> . . . .
>
> knowingly and intentionally distributed and possessed with intent to distribute a mixture and substance containing . . . heroin . . . and 50 grams and more of a mixture or substance containing cocaine base, also known as "crack cocaine," . . . .
>
> All in violation of Title 21, United States Code Sections 841(a)(1) and (b)(1)(A)(iii) and Title 18, United States Code, Section 2.

(Doc. 1, Indictment).

In *United States v. Huet*, 665 F.3d 588 (3d Cir. 2012), the Third Circuit set forth the standard for evaluating the sufficiency of an indictment:

> [A]n indictment is facially sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with

> accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Id.* at 321 (citation omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation" to permit a defendant to prepare his defense and invoke double jeopardy. *United States v. Kemp,* 500 F.3d 257, 280 (3d Cir. 2007)(quoting *United States v. Rankin,* 870 F.2d 109, 112 (3d Cir. 1989)). Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred.

*Id.* at 595.

The indictment, for the most part, meets this standard.[2] Both counts track the statutory language of the offenses charged, 21 U.S.C. § 846(a) for the conspiracy offense in Count I, and 21 U.S.C. § 841 for the substantive offense in Count II. There is also sufficient factual orientation. Geographically, Defendant is charged with having committed both offenses "in Huntingdon County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere." Temporally, the conspiracy offense alleges a time frame from "on or before November 2007 . . . and continuing to at least as late as on or about July 23, 2008," and the substantive offense alleges a time frame from "on or before November 2007 . . . and continuing to on or after July 23, 2008."

Defendant's specific objections also lack merit. First, the indictment can validly charge that Defendant conspired with "persons unknown." *See Government of the*

---

[2] We have a problem with the time frame of the substantive offense but deal with that below.

*Virgin Islands v. Hoheb*, 777 F.2d 138, 141 n.5 (3d Cir. 1985).[3] Second, there is nothing improper or in bad faith for the government to charge Defendant in a separate indictment with the same conspiracy charged against others in another indictment.

We add that the time frame for the conspiracy offense is open at one end, the beginning of the period, but that does not defeat the sufficiency of Count I. *See United States v. Rawlins*, 606 F.3d 73, 79 (3d Cir. 2010)(conspiracy charge open-ended at the beginning but that specifies an end date is sufficient). The time frame of the substantive offense is more problematic, as it is open-ended in both directions. Such a time frame is improper, *id.*, but we must remember the context in which we examine the claim, a postconviction challenge to trial counsel's effectiveness in not moving to dismiss the indictment before trial.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-prong test to establish ineffective assistance of counsel. First, counsel's performance must be deficient. *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005)(citing *Strickland*). Second, counsel's deficient performance must have prejudiced the defense. *Id.* (quoting *Strickland*). A petitioner must "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 105 (quoting *Strickland*).

---

[3] As noted, the indictment charges a conspiracy "with other persons known and unknown."

Even if counsel's performance was deficient, Defendant has not shown any prejudice. He has alleged that he was prejudiced but has not set forth any facts to support that contention. For example, he does not claim his ability to defend the case was hampered by the deficiency in Count II. We also observe that if counsel had successfully moved to dismiss Count II based on the open-ended time frame, the government could have cured the defect by seeking another indictment from the grand jury with a definite time frame. We therefore reject Defendant's third claim.

> D. *Defendant's Indictment Did Not Violate the Double Jeopardy Clause Simply Because Defendant Had Been Publicly Accused During the Trial of the Prior Indictment and Both Prosecutions Dealt With the Same Criminal Episode*

Defendant's fourth claim is that the indictment violated his Fifth Amendment right against double jeopardy because Defendant was publicly accused during the trial of the prior indictment and both prosecutions dealt with the same criminal episode, with the government "subdividing" the conspiracy offense between the two prosecutions.

We reject this claim. The Double Jeopardy Clause provides three constitutional protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *United States v. Lacy*, 446 F.3d 448, 455 (3d Cir. 2006)(quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). None of these circumstances is present here. That Defendant was identified in the trial of the prior

indictment against his co-conspirators as their drug supplier is irrelevant to the double jeopardy analysis since he was neither a party to those proceedings nor was his innocence or guilt an issue to be resolved at the trial of those proceedings. *United States v. Baird*, 63 F.3d 1213, 1218 (3d Cir. 1995)("jeopardy does not, and cannot, attach until one is made a *party* to a proceeding before a trier of fact having jurisdiction to try the question of guilt or innocence, and that, until such time, the constitutional double jeopardy prohibition can have no application")(emphasis in original). This claim therefore lacks merit.

> E. *Defendant Cannot Establish an Ineffectiveness Claim Based on Trial Counsel's Failure to Move to Suppress the Testimony Based on the Search of His Backpack Because He Has Not Established A Reasonable Probability that the Verdict Would Have Been Different Absent the Challenged Evidence*

Defendant's fifth claim is that trial counsel was ineffective in not moving to suppress the testimony of Robert L. Haines, Jr., a police officer with the Mifflin County Regional Police Department and a member of the Mifflin County Drug Task Force. Defendant contends that the testimony was based on an illegal search of his backpack, after he and his traveling companion were approached and detained without reasonable suspicion. He concedes he gave consent to the search, but only after his consent had been coerced by the detention.

We provide some brief background on Haines's testimony at trial. On January 10, 2008, he was on regular patrol duty in Lewistown, Pennsylvania, and noticed Defendant and another individual get off a bus at the bus terminal with no baggage

-10-

except a backpack. (Doc. 77, ECF p. 192). Suspecting they were involved in drug activity, the officer began a conversation with them. They provided identification. They said they were traveling from the Baltimore area to Huntingdon, Pennsylvania, and were meeting a friend who was going to drive them to Huntingdon. (*Id.*, ECF p. 194, 195). A criminal background check revealed nothing on Defendant, but his traveling companion had an outstanding warrant. (*Id.*, ECF pp. 195-96). During this time, two individuals arrived to pick Defendant and his companion up. One of the individuals also had an outstanding warrant. (*Id.*, ECF p. 196). These two individuals were also suspects in drug trafficking in Huntingdon County. (*Id.*, ECF p. 197).

Defendant was taken to the police department "for further processing." (*Id.*). According to Haines, Defendant consented to a search of his backpack. (*Id.*, ECF p. 202). The search revealed: (1) numerous razor blades; (2) over a hundred plastic baggies, and (3) several stick and roll-on deodorants with the caps off. (*Id.*, ECF pp. 198-99). Connecting these items to drug trafficking, the officer testified that razor blades are used to cut up base cocaine, baggies are used to wrap cocaine, and deodorants are used to mask the smell of narcotics. (*Id.*, ECF p. 199).

In addition to the general requirements of *Strickland* noted above, Defendant's claim that his lawyer was ineffective in not moving to suppress evidence under the Fourth Amendment requires him to show two things: (1) that the Fourth Amendment claim was meritorious; and (2) "that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate

-11-

actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986).

We will assume that the Fourth Amendment claim is meritorious. We reject the ineffectiveness claim on the other prong, for there is no reasonable probability that the verdict would have been different if the jury had not heard Officer Haines's testimony, given the other testimony at trial. That testimony came from various witnesses. Laura Shope and her boyfriend, Richard Mitchell, both testified they sold drugs for Defendant. (Doc. 75, ECF pp. 72-73; Doc. 77, ECF pp. 163-65). Mitchell saw Defendant cutting and bagging cocaine at Mitchell's house. (Doc. 77, ECF p. 167). There were other witnesses to Defendant's drug activities: Richard Hetrick, Ann Hetrick, Bridget Bark, and Shawn Stevenson. Some of the witnesses had cooperation agreements with the government, but that issue was fully explored at trial. We therefore reject the ineffectiveness claim based on the Fourth Amendment.

> F. *Any Violation of Defendant's Sixth Amendment Right to Counsel Arising From the Testimony of Jesse Lee Hamman Was Harmless Error*

Defendant's sixth claim is that his Sixth Amendment right to counsel was violated when Jesse Lee Hamman, who had a cooperation agreement with the government at the time, testified to statements Hamman elicited from Defendant while they were both inmates at the Adams County prison.

Jesse Lee Hamman testified at trial as follows. He was in custody in the Adams County prison, having pled guilty to a firearms offense. (Doc. 75, ECF p. 145).

He had signed a written plea agreement allowing the government to move to reduce his sentence if he provided substantial assistance. (*Id.*, ECF p. 146). While he was detained at the prison, he spoke with Defendant about Defendant's encounter with the local police at the Lewistown bus terminal on January 10, 2008, although Hamman refers to the FBI:

> A.  He [Defendant] was talking about who I knew, who he knew.  And I asked him about the time that the FBI came up on him in Lewistown.  And he was like, yeah, your cousin was with me.
>
> Q.  Who is your cousin?
>
> A.  Shawn Stevenson.  And I was like, so you're Black then? He was like, yeah.  So that's how I knew who he was.

(Doc. 75, ECF p. 148). At one point during the conversation, Hamman and Defendant talked about a person who had borrowed Hamman's car and had left crack cocaine in it. Hamman took the cocaine and used some of it himself. (*Id.*, ECF pp. 149-50). He was later threatened by the person who had borrowed his car. (*Id.*, ECF p. 151). He did not know who this person was working for. (*Id.*). During the conversation, Defendant told him that the person had left the cocaine in his car. (*Id.*, ECF p. 152). The prosecutor asked a final question on direct:

> Q.   Now did Black, when you talked to him, did he indicate that he had any relationship to this individual that borrowed the car?
>
> A.   Yeah, he said he was his cousin.

(*Id.*).

On cross-examination, the following exchange took place:

> Q.   Mr. Murphy is not the person who borrowed the car?

> A. No, he's not.
>
> Q. And Mr. Murphy told you that the guy who is pictured there in front of you left his drugs in your car?
>
> A. Yes.
>
> Q. And that's pretty much it?
>
> A. Yes.

(*Id.*, ECF p. 153).

The government violates the Sixth Amendment right to counsel when it uses an agent to elicit incriminating statements from a defendant outside the presence of the defendant's counsel. *Matteo v. Superintendent, SCI-Albion*, 171 F.3d 877, 891 (3d Cir. 1999).

We will assume that Hamman was a government agent for the purpose of Defendant's claim. Even if there were error in admitting the statements, the error was harmless because of the other evidence against Defendant, testimony of his co-conspirators that he supplied them with the drugs. *Id.* at 897 (even if there were a Sixth Amendment violation, the other evidence in the case indicated the error was harmless).

We base this conclusion on the fact that the statements allegedly elicited were really not incriminating, or barely so. Essentially, Defendant admitted during his conversation with Hamman that: (1) Hamman's cousin was with Defendant when the local police detained Defendant at the Lewistown bus terminal; (2) some other person had borrowed Hamman's car and had left cocaine in it; (3) Defendant knew this person had left the cocaine in the car; and (4) this person was Defendant's cousin. None of

-14-

these admissions bear on Defendant's guilt for the drug-trafficking charges against him. Given the nature of the admissions, we reject the Sixth Amendment claim. *See United States v. Hayles*, 471 F.2d 788, 793 (5th Cir. 1973)(harmless error to admit the defendants' statements which were "only inferentially incriminating . . . if anything . . . when viewed in the light of the overwhelming evidence of guilt from other sources"); *United States v. Guerra*, 334 F.2d 138, 145 (2d Cir. 1964)(admission of a statement that was not incriminating did not require reversal of the conviction).

> G. *The Tenth Amendment Does Not Prohibit the United States From Using Defendant's Prior Maryland Convictions for Second-Degree Assault to Designate Him As a Career Offender for Sentencing Purposes*

Defendant's seventh claim is that the Tenth Amendment prohibits the United States from using his prior Maryland convictions for second-degree assault to designate him a career offender for sentencing purposes.[4] In his view, the United States usurped Maryland's authority over state-law crimes by reclassifying the Maryland offenses as felonies under U.S.S.G. § 4B1.1, the career offender section, when they were only misdemeanors under state law. We reject this claim. *See United States v. Glover*, 153 F.3d 749, 758 n.6 (D.C. Cir. 1998)(Congress did not violate the Tenth Amendment by reclassifying state convictions as felonies because the reclassification was only for the purpose of federal law).

---

[4] The claim is phrased in the singular, but Defendant's reply brief makes it clear that the challenge is the two Maryland convictions for second-degree assault.

III. *Conclusion*

Having considered all of the claims, we will issue an order denying the 2255 motion. The order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Defendant is advised that he has the right for sixty (60) days to appeal our order denying his 2255 motion, *see* 28 U.S.C. § 2253(a), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. *See* Federal Rule of Appellate Procedure 22.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 11, 2013